## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RODRIGUES, ALBERT S., ET AL | : | CIVIL ACTION NO.: |
| | : | 3:08-cv-01417 (PCD) |
| Plaintiffs | : | |
| VS. | : | |
| | : | |
| JPMORGAN CHASE BANK, ET AL | : | |
| | : | JUNE 5, 2009 |
| Defendants | : | |

### MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

The Plaintiffs, Albert and Marie Rodrigues, (hereinafter collectively referred to as "Plaintiffs") hereby respectfully object to the Defendant's, JP Morgan Chase Bank, Trustee (hereinafter "Defendants"), Motion for Summary Judgment dated April 22, 2009, for the following reasons.

### 1.    Background

As set forth more fully in the attached affidavit, on or about September 19, 2004, the Defendants commenced a foreclosure action in Superior Court, Judicial District of Fairfield at Bridgeport (case No. FBT–CV-04-4002456-S) for foreclosure of a mortgage dated February 23, 1990, secured upon the residence of the Rodrigues' at 101 Northwood Drive, Easton, Connecticut (the "Note").

Pursuant to the Note the Defendants became obligated to repay Citicorp Mortgage, Inc. in the original principal amount of $450,000.00, together with interest and all costs of collection as set forth in the terms of the Note and Mortgage.

Defendants entered into an agreement of forbearance with the Plaintiff's predecessor in interest (Fairbanks Capital Corp.) on or about June, 2002 (the

"Forbearance Agreement"). As Defendants have consistently contended the Plaintiff took the Note and Mortgage while in default *subject to the Forbearance Agreement*. In fact, Defendants made payments according to the Forbearance Agreement notwithstanding that the Plaintiff has consistently failed to honor the Agreement. Meanwhile, Plaintiff campaigned against the Forbearance Agreement and insisted that the Defendants execute *another* agreement -- which contained incorrect balance figures -- and threatened to foreclose if Defendants did not play along with the new agreement. It is from this set of facts that the current dispute arose.

### 2.   Standard of Review

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### 3.   The Breach of Contract Claim is Not Time Barred

#### a) Accidental Failure of Suit

The Plaintiffs' affidavit provides that the 2002 Forbearance Agreement was breached in February 2004 when GMAC claimed a default. (See affidavit) This case was filed on August 18, 2008, within six years. Connecticut General Statutes §

2

52-576.  The Defendants agree that the Plaintiffs have not alleged a date the breach occurred.   Certainly, Plaintiffs may introduce such evidence without alleging a specific date.  Therefore, there is an issue of fact and summary judgment should not enter against the contract count.

Even if this Court entertained the thought that Plaintiffs were time barred to have brought a contract claim, the Federal Court in *Chappetta v. Soto*, looked to the Connecticut Supreme Court interpretation of General Statutes § 52-592, which is commonly is known as the saving statute. 581 F.Supp.2d 292, 294 (D. Conn. 2008); see, e.g., *Peabody N.E., Inc.* v. *Dept. of Transportation,* 250 Conn. 105, 116, 735 A.2d 782 (1999); *McKeever* v. *Fiore,* 78 Conn. App. 783, 795, 829 A.2d 846 (2003.) The Court in *Soto* further analyzed the Supreme Courts decision in *Rocco* v. *Garrison,* which stated "the commencement of an action for purposes of the savings statute means something less than the commencement of an action for statute of limitations purposes.  In all other respects, the Connecticut Supreme Court decided that case on its facts.  The Court did not need to, and accordingly did not, state a general rule concerning when an action brought in federal court is commenced for purposes of the savings statute." *Soto* at 295; 268 Conn. 541, 848 A.2d 352 (2004.)

General Statutes § 52-592 provides in relevant part that "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." General Statutes 52-592 (a).

3

Moreover, our Supreme Court has long held that § 52-592 "is remedial and is to be liberally interpreted." *Ross Realty Corp.* v. *Surkis,* 163 Conn. 388, 393, 311 A.2d 74 (1972); see also *Ruddock* v. *Burrowes,* 243 Conn. 569, 575, 706 A.2d 967 (1998); *Isaac* v. *Mount Sinai Hospital,* 210 Conn. 721, 728, 557 A.2d 116 (1989). Its essential purpose is to ensure "the plaintiff the right to a trial of his claim." *Contadini* v. *DeVito,* 71 Conn. App. 697, 702, 803 A.2d 423, cert. denied, 262 Conn. 918, 812 A.2d 862 (2002). That "broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts." (Internal quotation marks omitted.) *Isaac* v. *Mount Sinai Hospital,* supra, 733, quoting *Gaines* v. *New York,* 215 N.Y. 533, 539, 109 N.E. 594 (1915) (Cardozo, J.)

Intertwined with any analysis of the applicability of § 52-592 is a fundamental policy consideration in this state. "Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure…. For that reason, [a] trial court should make every effort to adjudicate the substantive controversy before it, and, where practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal." (Citations omitted; internal quotation marks omitted.) *Egri* v. *Foisie,* 83 Conn. App. 243, 249-50, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004); see also *Rocco* v. *Garrison,* 268

Conn. 541, 558, 848 A.2d 352 (2004); *Johnson* v. *Atlantic Health Services, P.C.,* 83 Conn. App. 268, 278, 849 A.2d 853 (2004).  As Justice Shea explained in *Andrew Ansaldi Co.* v. *Planning & Zoning Commission,* 207 Conn. 67, 540 A.2d 59 (1988): "Centuries ago the common law courts of England similarly insisted upon rigid adherence to the prescribed forms of action, resulting in the defeat of many suits for technical faults rather than upon their merits.  Some of that ancient jurisprudence migrated to this country with the settlers and has affected the development of procedural law in this state.  Beginning in the middle of the nineteenth century, however, our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm, which result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw." Id., 75-76 (*Shea, J.,* concurring).  General Statutes § 52-592 was enacted, in large measure, to shield the client from the fallibility of counsel.

Here, the 2002 Forbearance Agreement was breached in February 2004 when GMAC claimed a default.  As stated above, this case was filed on August 18, 2008, within six years and thus not time barred by either statute interpretation.

**4.     Tort Damages May be Awarded For Breach of Contract**

Defendants concede that there are exceptions to the ordinary rule such as "… where the contract created a special status or relationship between the parties so that some of the defendants' conduct is tortious even though it would not be tortious without the contract…." Citing *Thompson v. Bridgeport Hospital*, 199 Conn. Super.

5

Lexis 3253, 8-9 (Conn. Super. Ct. 1999). Defendants claim a lender and borrower have no special relationship. That may generally be true. Here, the facts are that the Defendants were the assignee of a note and mortgage subject to a Forbearance Agreement signed by a predecessor that the Defendants at first claimed to know nothing about and declared a default, per the Plaintiffs' affidavit, although the Plaintiffs kept the Agreement and the Defendants totally and recklessly ignored the Agreement. When one intentionally and recklessly breaches a contract, consequential damages may be awarded. "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Chiulli v. Zola*, 97 Conn. App. 699, 706-707, 905 A.2d 1236 (2006). With respect to damages, our Supreme Court has clarified that lost profits are considered an element of compensatory damages. *Ambrogio v. Beaver Road Associates*, 267 Conn. 148, 155, 836 A.2d 1183 (2003). "[O]ur case law unequivocally supports awarding lost profits as an element of compensatory damages for general breach of contract claims.

The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . The Restatement (Second) of Contracts divides a defendant's recovery into two components: (1) direct damages, composed of the loss in value to him of the other party's performance caused by its failure or deficiency; 3 Restatement (Second),

6

Contracts § 347 (a) (1981); plus, (2) any other loss, including incidental or consequential loss, caused by the breach . . . Id., § 347 (b). (emphasis added)

Traditionally, consequential damages include any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself. . . . Although there is no unyielding formula by which damages are calculated, it is [our] rule that [u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach." (Citations omitted; internal quotation marks omitted.) *Ambrogio v. Beaver Road Associates*, supra, 155. (emphasis added)

It is incumbent on the party asserting either direct or consequential damages to provide sufficient evidence to prove such damages. See *Frillici v. Westport*, 264 Conn. 266, 283, 823 A.2d 1172 (2003). Further, "[w]hen damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) *Carrano v. Yale-New Haven Hospital*, 279 Conn. 622, 646, 904 A.2d 149 (2006). The Plaintiffs' affidavit provides facts upon which the trier of fact could conclude the Defendants breached the Agreement intentionally or recklessly. When one party breaches, the other is excused from performance.

Defendants claim the Plaintiffs are protected by various consumer remedies but fail to describe how the Plaintiffs under these facts have other remedies. Regardless of other remedies, this is a remedy which the law allows them to make.

5.    **Tort Claims are Barred under Connecticut General Statutes § 52-577, Yet Connecticut General Statutes § 52-592 applies**

The attached affidavit shows the events complained of occurred in February, 2004. The Plaintiffs brought and served a counterclaim in the State court action on November 1, 2004 per Plaintiffs' affidavit. On April 17, 2006, JP Morgan filed a Motion to Strike the Rodrigues' special defenses, setoffs and counterclaims. The Rodrigues' filed their opposition on June 2, 2006. The court struck it and was sustained on appeal on July 15, 2008. Plaintiffs served and filed this complaint on August 18, 2008, and Defendants transferred it to the Federal Court.

It is true that the Second Circuit has held that tort claims are subject to Connecticut General Statutes § 52-577, which provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." *Williams v. Walsh,* 558 F.2d 667, 670 (2d Cir.1977); *see Schwartz v. Plainville,* 483 F.Supp.2d 192, 194 (D.Conn.2007).

State-law claims, such as, alleging fraud, unfair trade practices, invasion of privacy, conspiracy, and the torts of abuse, neglect, cruelty and reckless endangerment are all subject to Connecticut's three-year period for torts under Connecticut General Statute § 52-577. *Giulietti v. Giulietti,* 65 Conn.App. 813, 833, 784 A.2d 905 (2001) (stating that § 52-577 applies to fraud claims); *Goodrich v. Waterbury Republican American, Inc.,* 188 Conn. 107, 128, 448 A.2d 1317 (1982) (describing invasion of privacy as a tort); *Beizer v. Goepfert,* 28 Conn.App. 693, 702,

8

613 A.2d 1336 (1992) (noting that conspiracy to defraud is generally classified as a tort claim.)

But, Plaintiffs contend that as a result the inability to proceed on their counterclaim in the foreclosure action, Connecticut General Statutes § § 52-592 applies and the limitation is not deemed to have passed.  The statute provides:  "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." General Statutes 52-592 (a).

Further, where a federal statute is silent as to the applicable statute of limitations, courts are to borrow the most appropriate state limitations period. *See* *Wilson,* 471 U.S. at 266-67, 105 S.Ct. 1938.

## 6.    Does the Second Count allege Intentional Infliction of Emotional Distress

Plaintiffs allege in Count Two, paragraph 8, that Defendants wrongfully and intentionally inflicted emotional stress on them to pressure them into agreeing to incorrect terms and conditions.  The Plaintiffs affirm this in their affidavit.  The Defendants are on notice of the claim.  Plaintiffs respectfully submit they show in their affidavit extreme and outrageous behavior as required by Connecticut law (but which is not required to be pled in Federal Court complaints – providing for notice pleadings). This is not a claim as in *Heim* cited by defendants claiming liability for filing a law suit. *Heim v. California Federal Bank*, 78 Conn. App. 351, cert denied, 266 Conn. 911 (2003).   The issue depends on the degree of bad conduct.

Pressuring one to sign false terms and conditions rises or may rise to the level of outrageous conduct by a lender, Plaintiffs respectfully submit. This claim was also made in the dismissed counterclaim in the foreclosure action.

## 7.    CUTPA COUNT IS NOT TIME BARRED As Connecticut General Statutes § § 52-592 applies

The tort claim is not barred because the accidental failure of suit statute applies. The CUTPA count was also alleged in the counterclaim in the State Court. (See copy attached here to the affidavit and the Plaintiffs' motion). The facts alleged which give rise to CUTPA arose per the Plaintiffs' affidavit in 2004. Plaintiffs concede that claims brought under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42a-110 et seq., are subject to a three-year limitations period. See Lees v. Middlesex Ins. Co., 219 Conn. 644, 653, 594 A.2d 952 (1991) (stating that CUTPA claims are subject to Conn. Gen. Stat. § 42-110g(f)'s three-year time bar.)

Once again, Plaintiffs contend that the saving statute, General Statutes § 52-592, provides in relevant part that "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." General Statutes 52-592 (a).

Moreover, as quoted above, our Supreme Court has stated that § 52-592 is to be liberally interpreted. And its essential purpose is to ensure that the Plaintiffs have the right to a trial of this claim. Plaintiffs brought the same claims found on the

dismissed counterclaim within one year of the Appellate Court decision sustaining the demand.

## 8.   Emotional Distress Damages Can be Recovered Under CUTPA

"It remains unsettled whether damages for personal injuries, including emotional distress, may be recovered under CUTPA.   82 CBJ4 (Dec., 2008)  The CBJ article cites *Henchliffe v. American Motors Corp.,* 184 Conn. 607 (1981) for the proposition that the legislature intended the words "ascertainable loss" in Section 42-110g(a) to have a different meaning from "actual damages" in the same sentence. "

*Krutchkoff v. Fleet Bank, N.A.,* 960 F.Supp. 541, 550 (D.Conn.1996) (explaining that plaintiff could not recover damages under CUTPA for "ascertainable loss, including emotional distress, anxiety, outrage, financial inconvenience, loss of credit or damage to his credit reputation," because he had failed to establish that the bank violated his rights or caused the "ascertainable loss" from which he claimed he had suffered.)

The Federal Court in *Gervais v. Riddle & Associates, P.C.* addressed the following questions, which was asked to certify the following questions to the Connecticut Supreme Court: "(1) Are "statutory damages" (compensating a presumed statutory "loss") awarded pursuant to a consumer protection statute an "ascertainable loss" for purposes of conferring CUTPA standing?; and (2) If not, are "statutory damages" awarded pursuant to a consumer protection statute an "implied exception" to the CUTPA "ascertainable loss" requirement?  Defendant counters that several federal district court opinions have consistently concluded that a debtor who has merely received a debt collection letter does not satisfy the "ascertainable loss"

requirement pursuant to CUTPA. Plaintiff argues, however, the decisions on which Defendant relies did not consider the construction of "ascertainable loss" that they present in this case and thus, those decisions are not determinative. In addition, Plaintiff notes the lack of controlling precedent from the Connecticut Supreme Court on this issue." 363 F.Supp.2d 345, 356 (D. Conn. 2005.)

The Court further opined that Section 42-110b(a) of the Connecticut General Statutes prohibits persons from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To bring an action under CUTPA, however, a plaintiff must establish that he has "suffer[ed] any ascertainable loss of money or property ... as a result of the use or employment of a method, act or practice prohibited by section 42-110b." Conn. Gen. Stat. § 42-110g(a). "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 614, 440 A.2d 810 (1981). Id.

The Court further stated that it was "persuaded that Plaintiff had established an 'ascertainable loss' for purposes of CUTPA because it was alleged that, as a result of Defendant's conduct, which violated the FDCPA, he was deprived of the benefit of his bargain with MBNA that any attempt by MBNA or its successor in interest to collect upon his consumer credit account shall, should he be in default, be in accord with applicable federal and state law. Plaintiff 'received something other than what he [had] bargained for.'" See *Hinchliffe*, 184 Conn. at 614, 440 A.2d 810. "Plaintiff has not, and is not required to, allege or prove the amount of ascertainable

12

loss, because CUTPA 'expressly contemplates plaintiffs' judgments which do not include an award of money damages.'" Id. at 358.

Moreover, since the purpose of CUTPA is remedial, it should be interpreted liberally and allowed.

As a result of the foregoing there are contested issues of fact and applicable law requiring the Defendants' Motion for Summary Judgment to be denied.


                    THE PLAINTIFFS,


                By: /s/ Daniel Shepro
                    Daniel Shepro
                    Commissioner of the Superior Court
                    Shepro & Blake, LLC
                    2051 Main Street
                    Stratford, CT  06615
                    Ph: (203) 377-0770; Fax: (203) 377-6789
                    Fed. Juris No. ct05233

## **CERTIFICATION OF SERVICE**

I hereby certify that on June 5, 2009, a copy of the foregoing was filed electronically and served by mail on anyone able to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. In addition, a copy of the foregoing has been mailed by first class mail, United States mail, postage prepaid, on the following:

Geoffrey K. Milne, Esq.
Hunt, Leibert, Jacobson, P.C.
50 Weston Street
Hartford, CT  06120

/s/ Daniel Shepro
Daniel Shepro
Commissioner of the Superior Court

14