UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERT AND MARIE RODRIGUES,<br>    Plaintiffs, | :<br>:<br>: |
| v. | :<br>: Case No. 3:08-CV-1417 (PCD) |
| J.P. MORGAN CHASE BANK,<br>AS TRUSTEE, AND GMAC<br>MORTGAGE CORPORATION,<br>    Defendants. | :<br>:<br>:<br>:<br>: |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Albert and Marie Rodrigues brought this suit against Defendants J.P. Morgan Chase Bank ("J.P. Morgan"), the holder of a note and mortgage obtained by Plaintiffs, and GMAC Mortgage Corporation ("GMAC"), the servicer of the mortgage for J.P. Morgan (collectively "Defendants"). Plaintiffs allege that Defendants breached a forbearance agreement Plaintiffs entered into with Fairbanks Capital Corporation, the servicer of the note and mortgage before GMAC. The Complaint alleges three causes of action: 1) breach of contract; 2) intentional infliction of emotional distress; and 3) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42-110b(a). For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 21 ] is **granted in part and denied in part.**

**I.    BACKGROUND**

The following allegations are set forth in the Complaint, Plaintiffs' Affidavit in Opposition to Defendants' Summary Judgment Motion, and Defendants' Rule 56(a)(1) Statement.[1] Because this case is at the summary judgment stage, this Court views the record in

---

[1]    The allegations in Defendants' Rule 56(a)(1) Statement are admitted by Plaintiffs in their Rule 56(a)(2) Statement, except as otherwise noted.

the light most favorable to Plaintiffs as the non-moving parties.  See Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003).

In February 1990, Plaintiffs obtained a mortgage from Citicorp, Mortgage, Inc. in the amount of $450,000 by executing a note.  In May 1997, Citicorp Mortgage, Inc. assigned the note and mortgage deed to Ocwen Federal Bank, which subsequently assigned the note and mortgage deed to J.P. Morgan on November 15, 2000.  The assignment of the mortgage to J.P. Morgan was not recorded until April 28, 2003.  (Defs.' Rule 56(a)(1) Stmt. ¶¶ 1-4.)  At some point after the assignment to J.P. Morgan, J.P. Morgan assigned the mortgage's servicing rights to GMAC.  (Compl. ¶ 5.)

Plaintiffs eventually fell behind on their mortgage payments.  In June 2002, Plaintiffs entered into a forbearance agreement on their mortgage with Fairbanks Capital Corporation ("Fairbanks"), the servicer of the note and mortgage at that time.  (Pls.' Aff. ¶¶ 4-5.)  The forbearance agreement required monthly payments of $5,676.00, which was greater than Plaintiffs' monthly mortgage payments, until June 1, 2003.  (Id. ¶ 5.)  On June 1, 2003, the agreement provided that Plaintiffs "shall resume regular monthly payments pursuant to the terms and conditions of the Original Loan documents."  (Id. ¶¶ 5- 6.)  The next paragraph provided that, "[n]otwithstanding the foregoing, payments disclosed under this agreement does (sic) not constitute a reinstatement of the loan hereunder.  The Lender, as it sole discretion[,] shall re-evaluate the Loan to determine the form of your repayment of all outstanding principal, interest, late charges and attorney fees in connection with the Loan."  (Id. ¶ 7.)

Plaintiffs made all required monthly payments pursuant to the forbearance agreement to Fairbanks, and then to GMAC once GMAC obtained servicing rights.  (Pls.' Aff. ¶ 5.)  In June

2

2003, when Plaintiffs' mortgage payments were supposed to revert back to the payment schedule under the original loan documents, Plaintiffs asked GMAC to confirm the amount of their monthly mortgage payments going forward.  GMAC never responded, so Plaintiffs continued to make monthly payments of $5,676.00.  (Id. ¶¶ 6, 20-22.)  GMAC accepted Plaintiffs' payments until January 2004.

In January 2004, GMAC returned Plaintiffs' check for their monthly payment, claiming lack of funds in Plaintiffs' account.  (Pls.' Aff. ¶ 11.)   In a letter to Plaintiffs dated February 5, 2004, GMAC stated that Plaintiffs' mortgage loan had reached an advanced stage of delinquency and foreclosure proceedings would be initiated.  (Id. ¶ 14.)  Plaintiffs then sent GMAC a check for the mortgage payments due in January and February 2004, which GMAC returned to Plaintiffs.  GMAC also refused mortgage payments for March and April, after which Plaintiffs stopped sending payments. (Id. ¶¶ 16-17.)

Beginning in February 2004, Plaintiffs' attorney contacted GMAC in an attempt to discuss its refusal to accept Plaintiffs' mortgage payments, Plaintiffs' alleged delinquency, and the terms of the forbearance agreement.  (Pls.' Aff. ¶ 18.)  GMAC initially failed to respond, then denied that the terms of the forbearance agreement were applicable.  (Compl. ¶ 10; Pls.' Aff. ¶ 18.)  GMAC told Plaintiffs that they would need to enter into a new forbearance agreement to avoid foreclosure.  Plaintiffs refused because they believed that the agreement proposed by GMAC contained an incorrect balance owed. (Pls.' Aff.  ¶¶ 18, 23-24.)

In September 2004, J.P. Morgan filed a mortgage foreclosure action against Plaintiffs in Bridgeport Superior Court bearing docket number CV-04-4002456.  (Defs.' Rule 56(a)(1) Stmt. ¶ 6.) Plaintiffs filed an answer asserting the same counterclaims as the claims in this case.  (Id. ¶

3

7, Ex. A.)  On September 11, 2006, the superior court granted J.P. Morgan's motion to strike the counterclaims.  (Id. ¶ 8.)  The court found that, because the counterclaims were based on the forbearance agreement, they did not arise out of the same transaction–the underlying mortgage– as the complaint.  (See id. Ex. B at 5-8.)  The Connecticut Appellate Court affirmed the decision to strike the counterclaims on July 15, 2008.  (Id. ¶ 9.)  On August 18, 2008, this action was filed.  (Id. ¶ 10.)

Plaintiffs continue to dispute that they defaulted on their mortgage and that J.P. Morgan was entitled to foreclose.  (Pls.' Rule 56(a)(2) Stmt. ¶ 11.)  Plaintiffs claim that, because of Defendants' refusal to honor the forbearance agreement, they became emotionally upset and nervous, endured many sleepless nights, and continue to be sleepless, nervous, and frightened.  (Compl. ¶ 13.)  The Complaint seeks "[d]amages within the jurisdiction of the Superior Court," punitive damages, and attorneys' fees.  (Id. at 6.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Libby, Inc., 477 U.S. 242, 248

(1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). In determining whether the parties have met their respective burdens, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995). However, the non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also FED. R. CIV.

P. 56(e).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

## III. DISCUSSION

### A. Breach of Contract

Plaintiffs allege that Defendants breached the forbearance agreement by incorrectly asserting that Plaintiffs were in default on their mortgage, pressuring Plaintiffs to enter into a new forbearance agreement, and pursuing a baseless mortgage foreclosure action.  As a result of Defendants' breach, Plaintiffs claim that they "were emotionally upset and nervous, had many sleepless nights, and are and will continue to be frightened, nervous and sleepless." (Compl. ¶ 13.)  Defendants argue that the statute of limitations has run and that, in any event, emotional distress damages cannot be recovered on a breach of contract action.

*(1) Statute of Limitations*

Defendants argue that, because the Complaint does not articulate a date of breach, the date of the breach is the date on which Plaintiffs entered into the forbearance agreement, which was some time in June 2002.[2]  Since contract actions are subject to a six-year statute of limitations, CONN. GEN. STAT. § 52-576(a), Defendants argue that this action, which was filed in August 2008, is time-barred.

Although the Complaint is devoid of relevant dates, Plaintiffs' Affidavit in Opposition to Defendants' Summary Judgment Motion sheds some light on the matter.  According to Plaintiffs' Affidavit, GMAC accepted Plaintiffs' mortgage payments until January 2004, when GMAC

---

[2] Only the month and year of the forbearance agreement are included in the summary judgment papers.

returned Plaintiffs' check for lack of funds in Plaintiffs' account. In a letter to Plaintiffs dated February 5, 2004, GMAC stated that Plaintiffs' loan had reached an advanced stage of delinquency and foreclosure proceedings would be initiated. (Pls.' Aff. ¶ 14.) Thus, it appears that the alleged breach occurred on February 5, 2004, when Defendants advised Plaintiffs–allegedly in disregard of the forbearance agreement–that they were delinquent on their mortgage. Since the date of breach was February 5, 2004, Plaintiffs' breach of contract action is timely.

*(2) Entitlement to Emotional Distress Damages*

Defendants also argue that Plaintiffs are not entitled to emotional distress damages for their breach of contract claim. Indeed, the typical remedy for breach of contract is compensatory damages, *i.e.*, "the contract price or the lost profits therefrom." Gazo v. City of Stamford, 765 A.2d 505, 516 (Conn. 2001). "Mental suffering caused by a breach of contract, although it may be a real injury, is not generally considered as a basis for compensation in contractual actions." 24 Williston on Contracts §64:7 (4th ed. 2009). See also Gazo, 765 A.2d at 516 ("Although contract damages ordinarily consist of consequential losses, . . . they ordinarily do not encompass such losses as pain and suffering."); Gardner v. St. Paul Catholic High School, Inc., No. CV970143514, 2001 WL 1517042, at *6 (Conn. Super. Nov. 16, 2001) (same).

Plaintiffs counter that the relationship between Plaintiffs and Defendants falls within an exception to this rule. Courts have allowed recovery of emotional distress damages in breach of contract actions "where because of the nature of the contracted for activity[,] damages for emotional distress would have been contemplated by the parties . . . [or] where the contract created a special status or relationship between the parties so that some of the defendant's

conduct is tortious even though it would not be tortious without the contract . . ." Thompson v. Bridgeport Hosp., No. CV 980352686, 1999 WL 1212310, at *3 (Conn. Super. Nov. 17, 1999) (internal citations and quotations omitted).  Despite Plaintiffs' argument to the contrary, it does not appear that any Connecticut courts have recognized a special relationship between lenders and borrowers entitling borrowers to emotional distress damages.  In fact, Connecticut courts have held that a mortgage lender does not owe a fiduciary duty to the borrower and may act to protect its own interests.  Southbridge Assocs., LLC v. Garofalo, 728 A.2d 1114, 1119 (Conn. App. 1999).  Furthermore, a mortgage forbearance agreement is not the type of contract where the parties would have contemplated damages for emotional distress at the time of formation. See Deutsche Bank v. Lichtenfels, Nos. CV044003402S, CV065007438S, 2009 WL 2230937, at *5 (Conn. Super. June 17, 2009) ("[T]he court does not view a violation of these home mortgage agreements as being of the type that would suggest that parties at the time of contract formation would have contemplated emotional distress damages upon breach.").

 Since it is clear that Plaintiffs are not entitled to emotional distress damages, the Court must determine whether they seek other damages properly recoverable for breach of contract. While the only harm alleged in the Complaint and summary judgment materials is emotional, the Complaint seeks "[d]amages within the jurisdiction of the Superior Court[,]" punitive damages, and attorneys' fees.  (Compl. at 6.)  In their summary judgment damages analysis, Plaintiffs assert that Defendants "should not collect their claimed debt in excess of $800,000," as well as entitlement to their attorneys' fees, $100,000 for personal injury, and $100,000 for violation of CUTPA. Whether Plaintiffs are entitled to all or a portion of Defendants' claimed debt as compensatory damages is properly determined at trial, not at summary judgment.

To the extent that Plaintiffs seek emotional distress damages for their breach of contract claim, they are barred from recovering them. Since Defendants have not shown as a matter of law that Plaintiffs are not entitled to other types of compensatory damages, the Court denies summary judgment for Defendants as to the breach of contract claim.

**b. Intentional Infliction of Emotional Distress**

Plaintiffs argue that Defendants intentionally inflicted emotional distress on them by claiming an inconsistent and incorrect balance owed, pressuring Plaintiffs to agree to new terms and conditions, and commencing and continuing baseless foreclosure proceedings against Plaintiffs. (Compl. ¶¶ 12-13.) Defendants counter that Plaintiffs' claim is time-barred and that their conduct is not cognizable as a claim for intentional infliction of emotional distress ("IIED").

*(1) Statute of Limitations*

As an intentional tort, an IIED claim is subject to a three-year statute of limitations commencing "from the date of the act or omission complained of." CONN. GEN. STAT. § 52-577. The most recent act comprising Plaintiffs' IIED claim was the filing of the foreclosure action in September 2004, which suggests that Plaintiffs' claim is time-barred. Plaintiffs, however, argue that Connecticut's "accidental failure of suit" statute has extended the statute of limitations, rendering the claim timely. Section A of this statute states, in relevant part:

> If any action, commenced within the time limited by law, has failed one or more times to be tried on the merits because of insufficient service or return of the writ due to unavoidable accident or default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . .

9

CONN. GEN. STAT. § 52-592(a).

Thus, the question is whether the superior court's decision striking the counterclaims because they were insufficiently related to the mortgage foreclosure action falls within the ambit of the "accidental failure of suit" statute. Plaintiffs assert that the dismissal of their counterclaims was without regard to the merits and "for any matter of form." Defendants argue that an order granting a motion to strike is as final and complete as a judgment following a trial on the merits and therefore not due to "any matter of form."

In support of their argument that the statute does not apply, Defendants cite Hughes v. Bemer, 538 A.2d 703 (Conn. 1988), in which the Connecticut Supreme Court declined to apply the statute to an action originally disposed of on a motion to strike. The court in the original action granted the motion to strike because defendants failed to file a memorandum in opposition to the motion, which, pursuant to Practice Book § 155, meant that the party was deemed to have consented to the granting of the motion. While the original court's decision was not necessarily a determination on the merits, the Connecticut Supreme Court held that it was "nevertheless a final judgment whose issue are thereafter res judicata as between the parties." Id. at 705.

The Hughes decision is distinguishable from this action for two reasons. First, the decision was based on a judgment by consent, which is "in effect an admission by the parties that the decree is a just determination of their rights on the real facts of the case had they been found. It is ordinarily absolutely conclusive between the parties, and cannot be appealed from or reviewed on a writ of error." Shaw v. Spelke, 147 A. 675, 677 (Conn. 1929). Second, the party seeking to enforce the "accidental failure of suit" statute was at fault for failing to file a required memorandum in the original action. Connecticut courts often consider a party's dilatory or

10

negligent conduct in determining whether the statute applies. See Plante v. Charlotte Hungerford Hosp., No. CV075001512S, 2007 WL 2595569, at *5 (Conn. Super. Aug. 23, 2007) (holding that § 52-592 was applicable in part because "[t]here is no evidence of conduct by the plaintiffs that evinces any pattern of delay or other egregious conduct"). Here, by contrast, the superior court struck the counterclaims for a reason akin to a procedural deficiency that was not the fault of Defendants.

The Court finds Inovejas v Dufault, No. CV 880496171S , 2000 WL 327784 (Conn. Super. Mar. 13, 2000) to be more factually analogous to this case than Hughes v. Bemer, 538 A.2d 703 (Conn. 1988). In Inovejas, the court in the original action struck the only claim pertaining to one defendant because of improper joinder. As is the case here, the claim against the particular defendant in Inovejas was deemed insufficiently related to the claims against the other defendants. The plaintiff's subsequent action asserted claims against that defendant that were identical to those brought in the original suit. In ruling that § 52-592 extended the statute of limitations for filing the subsequent action, the court held that "[m]isjoinder is a procedural defect, neither implicating nor determining the merits of the underlying dispute," and thus the failure of plaintiff's first claim was "a quintessential 'matter of form.'" Id. at *2.

Connecticut courts have also emphasized that § 52-592 "is remedial and is to be liberally interpreted." Ross Realty Corp. v. Surkis, 311 A.2d 74, 76 (Conn. 1972). "Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts." Isaac v. Mount Sinai Hospital, 557 A.2d 116, 122 (Conn. 1989) (internal citations and quotations omitted).

Plaintiffs never received a hearing on the merits of their counterclaims in superior court. Moreover, the court did not strike the claims because of Plaintiffs' default or untimeliness or for any other procedural reason that would clearly operate as a final determination, as was the case in the Hughes decision. Therefore, the Court finds that the "accidental failure of suit" statute applies to this case. Since Plaintiffs filed this action within one year of the Connecticut Appellate Court's decision affirming the decision to strike their counterclaims, the Court finds that their IIED claim is timely.[3]

*(2) Merits of IIED Claim*

The elements of an intentional infliction of emotional distress claim are:

(1) that the actor intended to inflict emotional [distress] or that he knew or should have known that emotional distress was [the] likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe .

Angiolillo v. Buckmiller, 927 A.2d 312, 319-320 (Conn. App. 2007) (quoting Petyan v. Ellis, 510 A.2d 1337, 1342 (Conn. 1986)).  The Restatement (Second) Torts §46 emphasizes that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

[3] Defendants also argue that, even if § 52-592 applies, the one-year statute of limitations began to run on September 11, 2006, the date on which the superior court granted the motion to strike, not April 3, 2007, the date on which the superior court entered a final judgment on the motion to strike.  Thus, according to Defendants, a new cause of action was required to have been filed by September 11, 2007.  (Defs.' Reply Mem. at 3-4.) Even if Defendants are correct that the statute of limitations began to run on September 11, 2006, it was tolled pending the appeal of the decision on the motion to strike to the appellate court.  Section 52-592(c) states: "If an appeal is had from any judgment to the Supreme Court or Appellate Court, the time the case is pending upon appeal shall be excluded in computing the time as above limited."

community." Defendants argue that their conduct was not sufficiently egregious as a matter of law to sustain an IIED claim.

Connecticut courts have held that threatening or even filing a baseless lawsuit is not sufficient to sustain an IIED claim. The Connecticut Appellate Court has reasoned that "[t]he act of filing a lawsuit, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior or make the average member of the community raise their hand and exclaim, 'Outrageous!'" Heim v. California Federal Bank, 828 A.2d 129, 142 (Conn. App. 2003). See also Hiers v. Cohen, 329 A.2d 609, 612 (Conn. Supp. 1973) (holding that plaintiff's IIED claim, which was based on defendant real estate broker's numerous telephone calls to plaintiff demanding payment of a disputed brokerage fee and threatening to attach plaintiff's home, did not state a cause of action because the complaint did not adequately allege intent).

Deutsche Bank v. Lichtenfels, Nos. CV044003402S, CV065007438S, 2009 WL 2230937 (Conn. Super. June 17, 2009), is instructive because it involved debtors who brought an IIED claim against a mortgage servicing corporation based on the corporation's allegedly abusive collection practices. After the plaintiffs received correspondence from the corporation falsely claiming that they were in arrears, plaintiffs and their counsel attempted to contact the corporation to resolve the situation. The corporation initially would not respond to their communications indicating that it had erred and that plaintiffs were not in default. Id. at *10. Eventually plaintiffs' counsel received assurances that the error would be corrected. Despite these assurances, the corporation filed an allegedly baseless foreclosure action against them. Id. at *12. In granting summary judgment for the corporation, the court held that the plaintiffs had not shown that the corporation's conduct was sufficiently outrageous or that the corporation

13

acted intentionally or recklessly. Relying on an affidavit submitted by the plaintiffs in which they asserted that "at best the [defendant] has severe administrative problems," the court found that a lack of responsiveness did not translate into outrageous behavior or an intent to cause harm. Id. at *10,*13.

The court in Deutsche Bank contrasted the corporation's conduct with that of another mortgage lender described in Margita v. Diamond Mortgage Corp., 406 N.W.2d 268 (Mich. App. 1987), in which the Michigan Appellate Court reversed summary judgment for the defendant lender on an IIED claim brought by the debtor. In that case, the lender called the debtor several times a day for nearly two years, using vulgar and abusive language to demand payment on debts that were not and had never been overdue. The lender also threatened foreclosure on various occasions and ignored the debtor's repeated efforts to explain the situation and request an audit on the amount owed. Id. at 269, 272. The Deutsche Bank court noted that "nothing here com[es] close to the conduct in the Margita case." Deustche Bank, supra, at *10.

Even assuming that Defendants had no reasonable basis for threatening and filing a mortgage foreclosure action,[4] the Court finds that Plaintiffs have not shown that Defendants acted intentionally or recklessly and that their conduct was sufficiently outrageous. Unlike other cases in which lenders were found to have engaged in outrageous conduct, Defendants never harassed Plaintiffs about their allegedly overdue mortgage payments. Rather, the crux of

---

[4] Even when viewing the factual assertions in the light most favorable to Plaintiffs, the Court is not convinced that Plaintiffs were current on their mortgage loan in February 2004. Plaintiffs' forbearance agreement clearly gave the lender complete discretion to readjust the repayment of outstanding principal, interest, late charges and attorneys' fees in June 2003. Thus, it is possible that Plaintiffs' payment schedule was readjusted such that Plaintiffs' monthly payments from June 2003 to January 2004 were insufficient to cover the amount owed.

Plaintiffs' allegations is that GMAC was not responsive to their claims that they were not in default on their mortgage. This suggests that GMAC has serious administrative and customer service problems, not that Defendants intended to cause or recklessly caused Plaintiffs anguish.

In addition to failing to show outrageous conduct and intent, Plaintiffs have not alleged emotional damages that would qualify as severe by any reasonable jury. They allege that they became "emotionally upset and nervous, endured many sleepless nights, and continue to be nervous and frightened . . ." (Compl. ¶ 13.) They have submitted no evidence of the mental distress caused by defendants, let alone mental distress severe enough to sustain an IIED claim. See Deutsche Bank, 2009 WL 2230937, at *13 (granting summary judgment to defendants on IIED claim because, *inter alia*, husband's statements regarding how the stress caused by defendants aggravated his wife's multiple sclerosis were insufficient to establish that defendants' conduct exacerbated her condition).

For the reasons stated above, the Court grants Defendants' summary judgment motion as to Plaintiffs' IIED claim.

### C. Connecticut Unfair Trade Practices Act

Plaintiffs also argue that Defendants' conduct violated CUTPA. Defendants counter that the claim is time-barred and emotional distress damages are not recoverable under CUTPA.

*(A) Statute of Limitations*

CUTPA is subject to a three-year statute of limitations. CONN. GEN. STAT. § 42-110g(f). Since the last act constituting Plaintiffs' cause of action was the filing of the foreclosure action in September 2004, Defendants argue that the CUTPA claim is time-barred. For the reasons stated in the section analyzing the IIED claim, the Court finds that the "accidental failure of suit" statute

15

extended the statute of limitations for one year following the dismissal of the counterclaims in the mortgage foreclosure action. Thus, the CUTPA claim is timely.

*(B) Entitlement to Emotional Distress Damages*

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). In considering whether a practice violates CUTPA, Connecticut courts have adopted the criteria set forth in the Federal Trade Commission's "cigarette rule":

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . .

Hartford Electric Supply Co. v. Allen-Bradley Co., 736 A.2d 842-43 (Conn. 1999). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Id. at 843.

Plaintiffs argue that Defendants' refusal to honor the forbearance agreement and decision to proceed with the foreclosure proceedings violated CUTPA. Connecticut courts have held that CUTPA applies to unfair or deceptive conduct by mortgage companies and other holders of mortgage notes. For instance, in Borgert v. Ameriquest Mortgage Co., No. CV085003342S, 2009 WL 455504 (Conn. Super. Jan. 15, 2009), the court held that a homeowner's allegations that his mortgage service company failed to credit payments to his account, demanded immediate payments, and threatened foreclosure even though the homeowner was current on his loan

16

constituted a legally sufficient CUTPA claim.  Id. at *4.  Similarly, in Gebbie v. Cadle Co., 714 A.2d 678 (Conn. App. 1998), the appellate court affirmed a CUTPA judgment against the defendant, who had bought a mortgage and note with notice of a restructuring agreement but refused to honor that agreement.  The court held that the defendant's refusal to honor the restructuring agreement and release the foreclosure attachment even though it "openly acknowledges the existence of an agreement by which it is bound" required plaintiff to seek redress with the courts, which "is exactly the type of behavior that CUTPA seeks to discourage." Id. at 687.  See also Countrywide Home Loans, Inc. v. Needham, No. LLICV076000242S, 2007 WL 4211261, at *2-*3 (Conn. Super. Nov. 7, 2007) (denying plaintiff's motion to strike defendants' CUTPA counterclaim in mortgage foreclosure action because defendants' allegations that plaintiff improperly accelerated the debt secured by the mortgage indicated that plaintiff's actions were in breach of the contract, offended public policy, and caused injury to the consumer).

      Defendants counter that emotional distress damages are not recoverable under CUTPA.  CUTPA allows a plaintiff who suffers "any ascertainable loss of money or property, real or personal," as a result of an action prohibited by the Act to recover "actual damages."  CONN. GEN. STAT. § 42-110g(a).  Connecticut courts have interpreted this provision to exclude recovery of emotional distress damages.  See, e.g., Deutsche Bank, 2009 WL 2230937, at*1-*3; Builes v. Kashinevsky, No. CV095022520S, 2009 WL 3366265, at *5 (Conn. Super. Sept. 15, 2009).

      The Court agrees that Plaintiffs cannot recover emotional distress damages for their CUTPA claim.  Therefore, to the extent that Plaintiffs seek emotional distress damages, they are barred from recovering them.  Since Defendants have not shown as a matter of law that Plaintiffs

are not entitled to other types of damages recoverable under CUTPA, the Court denies summary judgment for Defendants as to the CUTPA claim.

## IV.     CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 21] is **granted in part and denied in part**.  The Court grants summary judgment as to Plaintiffs' intentional infliction of emotional distress claim and denies summary judgment as to Plaintiffs' breach of contract and CUTPA claims.  Plaintiffs are also barred from recovering emotional distress damages as to their remaining claims.

SO ORDERED.

Dated at New Haven, Connecticut, this <u>3rd</u> day of November, 2009.

/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court